IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

|  |  |
|---|---|
| SCOTT MATHEWS, individually, and on behalf of all others similarly situated, | Civil Action No. 19-21442 |
| Plaintiff, | |
| v. | OPINION |
| VERIZON COMMUNICATIONS INC., | |
| Defendant. | |

**WOLFSON, Chief Judge:**

Pending before the Court is Verizon Communications Inc.'s ("Defendant") motion to dismiss the amended putative class action complaint (the "Complaint") filed by plaintiff Scott Mathews ("Plaintiff"). Plaintiff's Complaint asserts a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"). Defendant seeks dismissal of Plaintiff's claims on the basis that Plaintiff failed to sufficiently allege a willful or negligent violation of the FCRA. For the reasons set forth herein, Defendant's Motion is **DENIED**.

## I.    FACTS & PROCEDRUAL HISTORY

For the purposes of this motion, the Court assumes as true the relevant facts derived from Plaintiff's Complaint and the documents attached thereto. In or around September 2018, Plaintiff discovered while performing a routine review of his credit report, that on September 10, 2018, Defendant performed a credit inquiry on him. Am. Compl. ¶ 10. In doing so, Defendant allegedly obtained access to Plaintiff's credit report. *Id.* at. ¶ 2 n.2. Plaintiff alleges that he was not, at that time, or any other time, Defendant's actual or prospective customer. *Id.* at ¶ 9.

Plaintiff subsequently received a letter, dated September 25, 2018, informing him of a Verizon account opened in his name. *Id.* at ¶ 11.  Plaintiff alleges that he had not opened an account with Defendant or any of its subsidiaries. *Id.*  Defendant acknowledged by letter dated October 1, 2018, that Plaintiff had not opened or initiated the account in question. *Id.* at ¶ 12.  The letter explained that Verizon had "completed its investigation into [Plaintiff's] claim regarding the Verizon Wireless account . . . and  has concluded that [Plaintiff is] not responsible for any of the charges on the account." *See* Am. Compl. Ex. B, October 1, 2018 Letter. Further, the letter stated that Verizon would submit a request to "each of the three major credit reporting agencies to remove [Plaintiff] from any of the reporting on the account." *Id.*

On November 14, 2019, Defendant allegedly conducted another credit inquiry on Plaintiff and accessed Plaintiff's credit report. *Id.* at ¶ 13.  Again, Plaintiff asserts that he had not opened or sought to open an account with Defendant or any of its subsidiaries. *Id.*  Following this second credit inquiry, Defendant allegedly sent cellular phone equipment to Plaintiff's home, which Plaintiff had not ordered. *Id.* at ¶ 16.

When Plaintiff contacted Defendant in or around November 2019, about the unauthorized credit inquiry, Defendant purportedly agreed to remove both the September 2018 and November 2019 inquiries from Plaintiff's credit reports. *Id.* at ¶ 14.  Plaintiff alleges that Defendant failed to do so, and never explained to Plaintiff why the credit inquiries were conducted without his authorization. However, each time Plaintiff contacted Verizon he was allegedly directed to the company's "Fraud Department." *Id.* at ¶¶ 14-15. Plaintiff explains that, to his knowledge, he was not a victim of identity theft. *Id*. at ¶ 17.  Plaintiff, relying on publicly posted complaints from various internet websites, further alleges that Defendant routinely obtains credit reports for individuals who are neither current nor prospective customers of Defendant. *Id.* at ¶¶ 21, 23-25 .

Plaintiff filed a one-count putative class action complaint against Defendant on December 17, 2019, asserting a violation of Section 1681b of the Fair Credit Reporting Act ("FCRA"). Thereafter, Defendant filed a motion to dismiss Plaintiff's Complaint, and in response, Plaintiff filed an Amended Complaint on March 3, 2020. On May 14, 2020, Defendant filed the instant motion to dismiss.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In evaluating the sufficiency of the complaint, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010); *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The moving party bears the burden of proving that the complaint fails to state a claim. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). "The inquiry is not whether plaintiff[] will ultimately prevail in a trial on the

merits, but whether [he] should be afforded an opportunity to offer evidence in support of [his] claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

The court separates the factual elements in the complaint from the legal conclusions, then determines whether the facts alleged suffice to establish that the plaintiff has a plausible claim for relief. *See Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian*, 696 F.3d at 365. Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted) (citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . . However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted) (citations omitted).  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (noting that on a motion to dismiss, a court may consider, *inter alia*, "exhibits attached to the complaint"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (noting that a court may consider essential documents to a plaintiff's claim referenced in its complaint); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

## III.  DISCUSSION

Plaintiff alleges that Defendant willfully violated the FCRA by knowingly obtaining Plaintiff's consumer report without a permissible purpose and without authorization from Plaintiff, in violation of Section 1681b.  Am. Compl. ¶ 44.  Defendant argues that Plaintiff has not pled sufficient facts to allege a FCRA violation and that it had a permissible purpose in accessing the Plaintiff's credit report.  ECF No. 13, Def. Br. at 2, 5.  Furthermore, Defendant argues that the heightened pleading standard under Fed. R. Civ. P. 9(b) should apply to the instant motion rather

than the pleading standard under Fed. R. Civ. P. 8.  *Id.* at 11-12.  The Court first addresses the applicable pleading standard before reviewing the FCRA claim.

### A. The Applicable Pleading Standard

To comply with Fed. R. Civ. P. 8 and survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Rule 8(a) only requires that the complaint set forth a basis for the court's jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for judgment.  In essence, Rule 8(a) only requires that the complaint put the defendants on notice of the claims against them."  *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 U.S. Dist. LEXIS 40832, at *30 (D.N.J. July 18, 2005) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002); Fed. R. Civ. P. 8(a)).

In contrast, "[t]he purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged in order to give them an opportunity to respond meaningfully to the complaint, and to prevent false or unsubstantiated charges."  *Rolo v. City of Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (internal quotation marks omitted) (citations omitted).  Therefore, to survive a motion to dismiss under Rule 9(b), "[a] plaintiff must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged."  *H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*, No. 10-3089, 2011 U.S. Dist. LEXIS 54767, at *10-11 (D.N.J. May 17, 2011) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotation marks omitted).  The standard is satisfied by either alleging the "date, time and place of the alleged fraud," or by "otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.3d at 223-24); *see also Hlista v. Safeguard*

*Properties, LLC*, 649 F. App'x 217, 221 (3d Cir. 2016); *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *H2O Plus*, 2011 U.S. Dist. LEXIS 54767, at *14. "Additionally, to survive a motion to dismiss, plaintiffs must also allege who made a misrepresentation to whom and the general content of the misrepresentation." *Caponegro v. United States HUD*, No. 15-3431, 2017 U.S. Dist. LEXIS 75720, at *4 (D.N.J. May 18, 2017) ((internal quotation marks omitted) (citations omitted). "A plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller*, 311 F.3d at 217). In short, to satisfy Rule 9's pleading standard, "plaintiffs must allege what happened to them." *Rolo*, 155 F.3d at 659 (noting also that prior to class certification, the allegation's sufficiency is measured against the action's named plaintiffs). "The heightened specificity required by Rule 9(b) extends to the pleading of all claims that sound in fraud." *Caponegro*, 2017 U.S. Dist. LEXIS 75720, at *4 (internal quotation marks omitted) (citations omitted). *See Kaul v. Christie*, No. 16-2364, 2019 U.S. Dist. LEXIS 28994, at *48 (D.N.J. Feb. 22, 2019).

Defendant argues that the Court should apply the heightened pleading standard of Rule 9(b) because Plaintiff's claims "sound in fraud," based upon the Complaint alleging that Verizon, by directing Plaintiff to its Fraud Department, created the appearance that Plaintiff was a victim of fraud. Def. Br. at 11-12; ECF No. 16, Def. Reply Br. at 8-9.; *see also* Am. Compl. ¶22 ("Verizon routinely and systematically directs individuals with complaints regarding impermissible pulls of their credit to the Verizon Fraud Department. However, it is not apparent that fraud is occurring or has occurred. Verizon is thus creating the appearance that fraud is occurring without any

confirmation."). Defendant argues that dismissal is appropriate under Rule 9(b) because Plaintiff has not alleged Defendant's motive, financial or otherwise, in unilaterally opening accounts, or alleged sufficient facts supporting "[Defendant's] alleged cover up of a fraudulent scheme to fabricate identify theft." *Id.* at 11-12.

Defendant is incorrect. The only claim presented in Plaintiff's Complaint is a violation of the FCRA. Despite Defendant's assertions to the contrary, Plaintiff's theory of the case is not grounded in allegations of fraud such that it would trigger the application of Rule (9)(b). Plaintiff does not specifically allege that Verizon misrepresented facts in order to access Plaintiff's credit report, or that it sought to fraudulently induce Plaintiff into opening an account with Verizon, or any other facts suggesting fraudulent conduct. Rather, Plaintiff alleges that Verizon, in violation of the FCRA, accessed Plaintiff's credit report, despite the fact that Plaintiff had not sought to become a Verizon customer or sought its services, in any fashion. Critically, the only alleged misrepresentation identified by Verizon is the Complaint's allegation that when Plaintiff contacted Defendant, via telephone, in order to investigate the basis for the credit inquiry, Verizon transferred Plaintiff to its Fraud Department, presumably in order to cover up its scheme and mislead Plaintiff into believing that she was a victim of identity theft or fraud by some third party; however, that alleged misrepresentation, purportedly occurred after the conduct which gave rise to the statutory violation. As alleged, at the time Plaintiff contacted Verizon, the Company had already accessed Plaintiff's credit report, and, in fact, the hard inquiry was the impetus for the phone call. Indeed, Plaintiff has not brought any fraud claims against Verizon. Thus, Plaintiff's claims do not "rely upon allegedly false representations made by Defendant." *GKE Enters., LLC v. Ford Motor Credit Co. LLC USA*, No. 09-4656, 2010 U.S. Dist. LEXIS 53714, at *14 (D.N.J. May 26, 2010); s*ee also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992) (finding that plaintifs' claims sounded

in fraud where complaint "brims with references to defendants' intentional and reckless misrepresentation of material facts."). Nor is Plaintiff's claim "indisputably immersed in unparticularized allegations of fraud" such that the "core theory of fraud permeates the entire [] Amended Complaint and underlies all of Plaintiff[]'s claims." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004). Therefore, I reject Defendant's arguments that the heightened particularly requirement of Rule (9b) applies in the instant motion, and I will review Plaintiff's motion to dismiss under Rule 8.

## B. The FCRA

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). "[W]ith the passage of the FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself — whether or not the disclosure of that information increased the risk of identity theft or some other future harm." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017). Because Congress "created a private right of action to enforce the provisions of the FCRA, and even allowed for statutory damages for willful violations," Congress has clearly expressed an intent to make the unauthorized disclosure of personal information redressable. *Id.* (stating that, based on its actions, it is clear that "Congress believed that the violation of FCRA causes a concrete harm to consumers."). "Indeed, the Third Circuit concluded that the unauthorized dissemination of private information is 'the very injury that FCRA is intended to prevent,' and, as a result, '[t]here is . . . a *de facto* injury that satisfies the concreteness requirement for Article III standing.'" *St. Pierre v. Retrieval-Masters Retrieval-Masters, Inc.*, No. 15-2596,

2017 U.S. Dist. LEXIS 42875, at *12 (D.N.J. Mar. 24, 2017) (quoting *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 640).

In order to prevail on a claim under the FCRA, a plaintiff must prove both that the defendant used or obtained the plaintiff's credit report for 1) an impermissible purpose, *see* 15 U.S.C. § 1681b(f), and 2) that the violation was either willful or negligent, 15 U.S.C. §§ 1681n, 1681o.

### C. The FCRA's Permissible Purpose Requirement

In order to protect consumers from unnecessary credit checks, the FCRA regulates the use of consumer reports by outlining circumstances under which consumer credit reports may be lawfully obtained, and by prohibiting using or obtaining a consumer report for any impermissible purpose. *See Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635, 641 (2016) (citing 15 U.S.C. §§ 1681a(d)(1)(A)-(C); 15 U.S.C. § 1681b)). Section 1681b(f) of the FCRA provides that:

> A person shall not use or obtain a consumer report for any purpose unless— (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). Accordingly, "any consumer reporting agency may furnish a consumer report under the [enumerated] circumstances and no other . . . [i]n accordance with the written instructions of the consumer to whom it relates." § 1681b(a)(2). All persons must have a permissible purpose under the FCRA to obtain a consumer report. *Id*. The permissible purposes include, among other things: in order to respond to a court order, in accordance with the written instructions of the consumer, to a person which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished, to a person who intends to use the information, as a potential

investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or otherwise has a legitimate business need for the information in connection with a business transaction initiated by the consumer. 15 U.S.C. §§ 1681b(a)(1)-(3).  The statutorily enumerated purposes are the only permissible purposes for which a consumer credit report may be obtained.  *See Ross v. Hayt, Hayt & Landau, LLC*, No. 15-1506, 2015 U.S. Dist. LEXIS 166787, at \*11-12 (D.N.J. Dec. 14, 2015); *Cooper v. Pressler & Pressler, LLP*, , 186 (D.N.J. 2012).  Moreover, the "FCRA imposes liability for using or obtaining a consumer report in violation of the FCRA, not simply for releasing or disseminating a report."  *Slack v. Suburban Propane Ptnrs., L.P.*, No. 10-2548, 2010 U.S. Dist. LEXIS 98602, at \*19 (D.N.J. Sept. 21, 2010) (quoting *Cole v. U.S. Capital*, 389 F.3d 719, 731 (7th Cir. 2004)); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA.").

The FCRA broadly defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).  "Consumer" is defined simply as "an individual." *Id.* at § 1681a(c). Here, there is no dispute that Defendant is a "person" or that Plaintiff is as an "individual" under the statute.  Am. Compl. ¶¶ 4-5, 45-46.  Rather, the focus of the parties' dispute is whether Plaintiff has adequately alleged that Defendant lacked a permissible purpose for accessing Plaintiff's credit report, and that Defendant's alleged violation of the FCRA was either willful or negligent.

Here, Defendant argues that it believed Plaintiff was seeking to open an account, and thus it had a legitimate business need for accessing Plaintiff's credit report.  Def. Br. at 8.  Moreover,

Defendant argues that because it had a legitimate business need for Plaintiff's credit history, it did not require Plaintiff's written authorization prior to obtaining his credit report.  *Id.*

### 1.   The Legitimate Business Need

The FCRA permits a person or entity to access an individual's credit report when that person or entity has a "legitimate business need for the information" that is "connect[ed] with a business transaction that is initiated by the consumer."  15 U.S.C. § 1681b(a)(3)(F)(i).  Plaintiff argues that he never authorized Defendant to perform an inquiry into his credit, nor did he initiate a business transaction with Defendant.  Pl. Br. at 7-12.

Defendant argues that written authorization is not required where a legitimate business need exists, such as the facilitation of a business transaction, and that here, it believed Plaintiff was seeking to open a Verizon account.  Def. Br. at  9 n.1; Def. Reply Br. at 7 n.2.  Defendant, acknowledging Plaintiff's assertion that he never contacted Verizon, contends that Plaintiff must have been a victim of identify theft and, moreover, it is irrelevant whether Plaintiff initiated the transactions because under the FCRA, a service provider has a " 'legitimate business need' for a consumer's credit report (i.e., a 'permissible purpose' for accessing such report), even when an imposter posing as the consumer opens an account in the consumer's name."  Def. Br. at 5. To bolster its argument that it had a permissible purpose to conduct a check of Plaintiff's credit, Defendant cites cases involving identity thieves impersonating a consumer and causing entities to pull that consumer's report.  *See* Def. Br. at 5-8 (collecting cases); *see also Bickley v. Dish Network, LLC*, 751 F.3d 724, 731 (6th Cir. 2014) (holding thatwhere an identity thief purporting to be a consumer requested a service from a user, the user, in verifying the identity of the consumer, had a permissible purpose to obtain the report); *Glanton v. DirecTV, LLC*, 172 F.Supp 3d 890,896 (D.S.C. 2016) ("Courts have reached the conclusion that there is no violation of Section 1681b

when a creditor obtains a credit report due to an imposter's application for credit even though the identity theft victim did not make the application.").

In response, Plaintiff contends that this Court cannot consider Defendant's arguments because they rely on " 'facts' that have not been alleged in the Complaint. Plaintiff has plainly alleged that during all relevant times he has never had any identity theft issues to his knowledge. If Plaintiff had been the victim of identity theft, it is at best curious (and perhaps bordering on inexplicable) that Plaintiff himself (and not the purported fraudster) would have received cellular phone equipment."  Pl. Br. at 8-9.  In that regard, Plaintiff asserts that there are a number of plausible explanations, other than identity theft, for example a potential systematic internal error at Verizon or deliberate wrongdoing by a Verizon employee, which would support the FCRA violation and that Plaintiff is entitled to discovery on his claims.  *Id*. at 9-10.

Although Defendant is correct that several courts, outside of this Circuit, have held that Section 1681b is not violated when a business obtains a credit report as a result of an identity thief's fraudulent application for services or credits, here, unlike in the cases relied upon by Defendant, it is not alleged that Plaintiff was a victim of identity theft, nor do the Complaint's factual averments plainly support the conclusion that Plaintiff was a victim of identify theft. *See e.g., Bickley v. Dish Network, LLC*, 751 F.3d 724, 731 (6th Cir. 2014); *Daniel v. Bluestem Brands, Inc*., No. 13–11714, 2014 WL 81763, at *5 (E.D.Mich. Jan. 9, 2014) ("[A] potential creditor does not violate section 1681b(f) when it accesses a plaintiff's credit report for a permissible purpose, even if the plaintiff's identity was stolen and the plaintiff did not initiate the business contact."); *Ewing v. Wells Fargo Bank*, No. 11–8194, 2012 WL 1844807, at *4 (D.Ariz. May 21, 2012) (finding that the plaintiff's allegation that the defendant did not have a permissible purpose for obtaining her credit did not state a claim under section 1681b(f), in part, because "[t]he allegation

that Plaintiff filed a police report for identity theft might indicate that someone used her identity to apply for another loan or some other credit transaction with Wells Fargo, in which case Wells Fargo might have had a legitimate reason for pulling Plaintiff's credit report.").  In *Bickley*, for example, there was no dispute that the defendant accessed the plaintiff's credit report because an identify thief posing as the plaintiff attempted to open an account with defendant. 751 F.d at 724. After receiving the identify thief's application, the defendant pulled the plaintiff's credit report in order to verify his or her identity. *Id*. at 726. The Sixth Circuit affirmed the grant of summary judgment in favor of the defendant, finding that it had a legitimate business need for the plaintiff's credit information  to confirm the applicant's identity. *Id*. at 732. Moreover, the Court noted that before receiving any indication that the application was fraudulent, the defendant "believed in good faith that Bickley was 'the consumer' ... [and] that [the defendant's] alleged conduct conferred a benefit to Bickley" *Id*.  732–33 (emphasis in original).The Court pointed out that "[t]he requirement that a consumer 'initiate' a business transaction is designed to protect a consumer's privacy and credit-related data by preventing companies from running credit checks that are unrequested by the consumer," and explained that conducting a credit check to verify a consumer's identity is consonant with that purpose and does not violate the FCRA. *Id***.**

A critical component of  *Bickley*'s holding was the defendant's belief that the plaintiff was a potential customer and that the defendant's attempt to verify the consumer's identity and eligibility was in good faith.  Here, however, taking Plaintiff's allegations as true, as the Court must at this motion to dismiss phase, that is not what occurred in the instant case. Plaintiff's Complaint expressly disclaims the possibility of identity theft  and avers that accessing the credit reports of non-customers is an ongoing problem at Verizon.  If, in fact, Plaintiff was, unknowingly, a victim of identity theft, and Defendant obtained Plaintiff's credit report as a result of an inquiry

from a third party seeking to open an account in Plaintiff's name, then Defendant may assert those facts as a defense in an attempt to defeat Plaintiff's Section 168b1 claim. However, such a defense relies on additional facts outside of the Complaint, and thus, it is more appropriate for consideration at the summary judgment phase, as was done in *Bickley*. As alleged, Plaintiff never sought to acquire services from Defendant, and to the best of his knowledge, he was not a victim of identity theft, but yet, on two separate occasions – just over one year apart – Defendant accessed his credit report. At this juncture, that is sufficient to state a claim under Section 1681b.

Moreover, Defendant contends that Plaintiff's theory of the case is economically unsound for Verizon, rendering Plaintiff's allegations that Defendant accessed Plaintiff's credit report without a permissible business purpose implausible. *Id.* at 10-13. Def. Br. at 11-12; Def. Reply Br. Supp. at 3-4; *see also Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 51 (3d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)) ("[I]f the claim is one that simply makes no economic sense— respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary."). In that regard, Defendant contends that "[c]ommon sense counsels against inferring that, for absolutely no business or financial gain, Verizon would unilaterally open accounts for people who do not want them and then send them free cell phones." Def. Reply Br. at 6. I disagree.

As an initial matter, Defendant's reliance on *Cosmetic Gallery* is misplaced, as there, the Third Circuit was referencing the burden of proof required at the summary judgment stage, and plaintiffs are not required to demonstrate economic plausibility at the pleading stage. *Cosmetic Gallery*, 495 F.3d at 51-52. To the contrary, in *H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*, the defendants unsuccessfully argued the implausibility of the plaintiff's claim because it would be illogical for it to market and sell a deficient product that would expose themselves to a $15

million damages claim.  2011 U.S. Dist. LEXIS 54767, at *10-11.  The plaintiff, there, argued that its allegations were plausible regardless of the discernibility of defendants' motives.  *Id.* at *12-13.  The Court agreed with the plaintiff that "[d]efendants have misinterpreted what is required at the pleading stage under *Twombly*," and that "[w]hile [d]efendants are correct that [p]laintiff's claims must be plausible on their face, there is no requirement that [p]laintiff must also plead a plausible motive for [d]efendants' actions."  *Id.*  (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Furthermore, the court reasoned that the "plaintiff is only required to provide enough factual matter (taken as true) to suggest the required element[s] of the claims asserted."  *Id.* (internal quotation marks omitted) (citations omitted). Here, Plaintiff's theory is plausible on its face, and, irrespective of Plaintiff's failure to identify a motive for Defendant's behavior, Plaintiff has pled enough factual information to support each element of a Section 1681b claim.  Accordingly, I will not dismiss Plaintiff's Complaint on that basis.

### 2.  Written Authorization

Plaintiff also proffers an alternate basis for finding a Section 1681b violation. Plaintiff asserts that regardless of whether Verizon believed he was a potential customer, Defendant violated the FCRA, by failing to obtain Plaintiff's written authorization prior to accessing his credit report. Pl. Br. at 12-13; *see also* Am. Compl. ¶ 19 ("[e]ven if Plaintiff had been a prospective Verizon customer (which he was not), Verizon did not have a permissible purpose in obtaining Plaintiff's credit report as Defendant would have been required to receive written instructions from Plaintiff, as required pursuant to 15 U.S.C. § 1681b(a)(2) of FCRA, prior to accessing Plaintiff's consumer report.").  In response, Defendant contends that the "argument that Verizon violated the FCRA by obtaining his credit report without Plaintiff's written instructions is based on a

misreading of the statute," and the FCRA does not, in fact, require written authorization. Def. Reply Br. at 7 n.2.

Section 1681b(a)(2) provides that one permissible purpose for accessing a consumer's credit report is "[i]n accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. §1681b(a)(2). However, pursuant to the consumer's written instructions is not the only permissible purpose, and the statute goes on to outline various other permitted purposes, such as where the credit report is obtained to use the information in connection with a credit transaction involving the consumer or for employment purposes. The statute is written in the disjunctive and does not require written authorization under all circumstances, rather, written authorization is one permissible circumstance for accessing an individual's credit report. *See Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015) ("the statute provides that one circumstance in which credit reports may be obtained legally is 'in accordance with the written instructions of the consumer to whom it relates.' This provision does not apply to every single one of the statute's authorized purposes." (citing 15 U.S.C. § 1681b(a)(2)); *Jones v. Best Serv. Co.*, No. 14-9872, 2017 WL 490902, at *8 (C.D. Cal. Feb. 6, 2017) ("a credit report can be accessed without a consumer's permission for other 'permissible purposes' under the FCRA."), *aff'd*, 700 F. App'x 580 (9th Cir. 2017).

Accordingly, Plaintiff cannot sustain a FCRA claim based on Defendant's alleged failure to obtain written authorization to access his credit report, so long as Defendant had a permissible purpose for accessing the report.

### D.  The FCRA's Culpable Mental States

In order to state his claim that Defendant violated the FCRA and recover damages, Plaintiff must establish that Defendant willfully or negligently failed to comply with a requirement imposed

by the FCRA.  5 U.S.C. § 1681n; 15 U.S.C. § 1681o.  The FRCA imposes liability for negligent noncompliance with the Act and it provides for additional penalties where the violation is willful. *Id.* Here, Plaintiff alleges that Defendant's violation of the FCRA was "intentional, willful, reckless, and . . . grossly negligent."  Am. Compl. ¶ 32

Defendant claims that Plaintiff has not pleaded sufficient facts supporting his allegation that Defendant acted "willfully" in violating the FCRA.  Def. Br.. at 5, 14.  Defendant states that Plaintiff's allegations are conclusory and that Plaintiff may not "rely on anonymous posts to www.reddit.com and www.complaintsboard.com to support his individual claim."  *Id.* at 16-17.

### 1.   Negligent Violations of the FCRA

Defendant argues that Plaintiff has not specifically alleged that Defendant "negligently failed to comply with the FCRA" and therefore, any claim for the negligent violation of the FCRA should be dismissed.  Def. Br. at 14.

Section 1681o(a)(1)-(2) provides for civil liability against "any person who is negligent in failing to comply with any requirement [of the FCRA]" and provides for "actual damages sustained by the consumer as a result of the failure."  15 U.S.C. §§ 1681o(a)(1)-(2).  The FCRA allows for the recovery of emotional distress damages as actual damages.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719-20 (3d Cir. 2010).

Defendant argues that because Plaintiff has not explicitly alleged any negligence on Defendant's part, the claim for the negligent violation of the FCRA should be dismissed.  Reply Br. at 10-11.  Defendant further argues that Plaintiff is required to allege actual damages in order to assert a claim for negligent noncompliance with the FCRA and his claim of emotional distress is "misplaced."  Def. Br. at 14 n.3; Reply Br. at 11.

First, Plaintiff's failure to cite to section 1681o as part of a claim for the negligent violation of the FCRA does not, by itself, warrant the dismissal of the claim.  "A plaintiff's failure to cite a specific section of the FCRA will not require the court to dismiss the complaint so long as there are sufficient factual allegations to support a meritorious claim."  *Maraldo v. Bureaus, Inc.*, No. 18-2661, 2018 U.S. Dist. LEXIS 96655, at *5 (June 8, 2018) (citations omitted).  *See Boone*, 2018 U.S. Dist. LEXIS 14951, at *31 (stating that "[c]ourts do not generally dismiss complaints for failure to cite to a specific subsection of a statute").  Here, as will be discussed in greater detail *infra*, Plaintiff has adequately alleged facts sufficient to support either a negligent or a willful violation of the FCRA.

Second, the Third Circuit's approach to showing actual damages in a FCRA claim is not as stringent as Defendant suggests.  In *Reilly v. Solar*, the court addressed the issue of actual damages under the FCRA and noted that:

> The Third Circuit has held that proof of such injury does not require corroborating testimony or medical or psychological evidence in support of the damage award.  Such corroboration, our Circuit has held, goes only to the weight of evidence of injury, not the existence of it.  Therefore, if a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA. The fact that a plaintiff's injuries relate to the stress and anxiety caused by a defendant's conduct does not change that.  Indeed, this is precisely the kind of injury that Congress must have known would result from violations of the FCRA.

18-12356, 2020 U.S. Dist. LEXIS 99673, at *25-26 (D.N.J. June 8, 2020) (internal quotation marks omitted) (citations omitted); *see also Cortez*, 617 F.3d at 719 (holding that emotional distress damages constitutes actual damages under the FCRA).

Plaintiff has alleged sufficient facts that he "was forced to expend time, resources, and effort" in attempting to remedy the situation with Defendant's inquiries into his credit.  Am.

Compl. ¶ 12.   It is plausible that such repeated efforts would cause an individual stress or anxiety, and that a jury could find Plaintiff suffered emotional distress from Defendant's actions.  *Philbin v. Trans Union Corp.*, 101 F.3d 957, 966 (3d Cir. 1996) (stating that the "FCRA plaintiff must prove causation by a preponderance of the evidence").   Accordingly, Plaintiff has adequately alleged that Defendant acted negligently and identified actual damages stemming from that negligence.

### 2.  Willful Violations of the FCRA

Plaintiff alleges that Defendant willfully violated the FCRA by impermissibly accessing Plaintiff's credit information and is liable pursuant to section 1681n.  Am. Compl. ¶¶ 12, 19-22, 49-51.  Defendant argues that Plaintiff cannot establish that Defendant committed any willful violation of the FCRA.  Def. Br. 2, 5, 14-18.

Section 1681n(a) imposes civil liability on any person who willfully fails to comply with respect to any consumer.  15 U.S.C. § 1681n(a).  *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA.") (citing 15 U.S.C. §§ 1681b(f), 1681n(a)).

The Supreme Court, in *Safeco Ins. Co. of Am. v. Burr*, held that in order for a violation of the FCRA to be willful, it must have been committed knowingly or recklessly.  551 U.S. 47, 56-58 (2007)).  The Court rejected an argument that "willfulness" is limited to knowing violations but rather held that an action is only reckless if it is objectively unreasonable.  *Id.*  Rather, "[t]he term wilful [sic] means an omission or failure to do an act ... voluntarily and knowingly with a purpose [to] disobey or disregard of the law, or with reckless disregard of a known statutory duty under the Fair Credit Reporting Act."  *Reed v. Swatch Grp. (US), Inc.,* No. 14-896, 2015 WL

5822669, at *2 (D.N.J. Oct. 1, 2015) (quoting *Price v. Trans Union, L.L.C.,* 839 F.Supp.2d 785, 808 (E.D.Pa.2012)).There is no willful violation of the FCRA if, at the time of the defendant's actions, his conduct could reasonably have been thought lawful. *Safeco Ins. Co.,* 551 U.S at 58. This objective inquiry is made by the court rather than the jury and the defendant's subjective intent is irrelevant. *Id.* at 70 n.20. Consistent with that approach, courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful— misconduct. *See Smith v. HireRight Solutions, Inc.,* 711 F.Supp.2d 426, 435 (E.D.Pa. 2010) (finding that a plaintiff had sufficiently alleged willfulness where the complaint indicated that the defendant had repeatedly engaged in "objectionable conduct" by reporting a single criminal history incident multiple times on a consumer report—an assertion that could, "at minimum, rise to the level of reckless disregard").

Here, Plaintiff has pleaded sufficient facts to plausibly allege that Defendant either negligently or willfully accessed Plaintiff's credit report, without a permissible business purpose, in September 2018 and November 2019. In or around September 2018, Plaintiff discovered that on September 10, 2018, Defendant performed a credit inquiry on him. Am. Compl. ¶ 10. Plaintiff alleges that he was not, at that time, or any other time, Defendant's actual or prospective customer. *Id.* at ¶ 9. Plaintiff subsequently received a letter dated September 25, 2018, informing him that a Verizon account had been opened in his name. *Id.* at ¶ 11. Plaintiff alleges that he had not opened an account with Defendant or any of its subsidiaries. Plaintiff alleges that Defendant acknowledged by a letter dated October 1, 2018, that Plaintiff had not opened or initiated the account in question, and concluded that Plaintiff was "not responsible for any of the charges on the account." Am. Compl., Ex. B. *Id.* From these facts one can reasonably infer that Defendant either, in error or as a result of an oversight, or some other circumstance which could potentially constitute negligence,

accessed Plaintiff's credit report. Plaintiff also alleges that this was not an unusual occurrence, but rather, that Defendant routinely opened Verizon accounts, and accessed the credit reports of other individuals who were not seeking to become Verizon customers, circumstances from which one could also theoretically infer a willful violation.  *Id*. at ¶ 27.

Then, just over a year later, on November 14, 2019, Defendant allegedly conducted another hard inquiry and obtained Plaintiff's credit report.  Am. Compl. ¶ 13.  Again, Plaintiff asserts that he had not opened or sought to open an account with Defendant or any of its subsidiaries.  *Id.*  The facts presented by Plaintiff, which the Court presumes to be true, are sufficient to suggest that Defendant was put on notice prior to the November 2019 credit inquiry that Plaintiff was not seeking to initiate a business transaction. Even assuming, *arguendo*, that the September 2018 credit inquiry only supports a negligent violation of the FCRA, Plaintiff has alleged sufficient facts regarding the November 2019 credit inquiry that, when considered in conjunction with the October 2018 events, could plausibly support the conclusion that it was objectively unreasonable for Defendant to conduct a second credit inquiry.  As such, Plaintiff has pled sufficient facts showing more than a sheer possibility that Defendant acted unlawfully and in violation of the FCRA. Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is denied.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

**DATED**: September 1, 2020                              /s/          Freda L. Wolfson
                                                        Freda L. Wolfson
                                                        Chief U.S. District Judge